# Exhibit H

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ACQIS LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS CO., LTD., ET AL.<br><br>     Defendants. | Civil Action No. 2:20-cv-00295-JRG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF ACQIS LLC'S REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | "PCI BUS TRANSACTION" | | 1 |
| | A. | The Court has discretion to revisit the prior claim construction analyses to resolve the parties' dispute here. | 2 |
| | B. | ACQIS's construction is consistent with and adds specificity to Judge Davis's analysis and construction. | 3 |
| | C. | Judge Burroughs applied a new interpretation of the parties' agreed construction, not Judge Davis's construction, at summary judgment. | 4 |
| | D. | ACQIS's construction is consistent with its positions at the PTAB. | 5 |
| | E. | The intrinsic record and extrinsic evidence show that a "PCI bus transaction" does not require "parity" or "control signals." | 6 |
| III. | "ADDRESS AND DATA BITS" / "ADDRESS BITS, DATA BITS, AND BYTE ENABLE INFORMATION BITS" | | 8 |
| IV. | "ENCODED" / "SERIAL" | | 8 |
| V. | "DATA TRANSFER SIGNAL" | | 9 |
| VI. | "USB" / "UNIVERSAL SERIAL BUS (USB) PROTOCOL" / "UNIVERSAL SERIAL BUS (USB) PROTOCOL [DATA/INFORMATION]" | | 10 |
| VII. | "CONSOLE" | | 10 |

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*ACQIS LLC v. Alcatel-Lucent USA Inc.*,
  No. 6:13-CV-638, 2015 WL 1737853 (E.D. Tex. Apr. 13, 2015) ..................................... 3, 4, 5

*ACQIS LLC v. Appro Int'l, Inc.*,
  No. 6:09-CV-148, 2011 WL 382556 (E.D. Tex. Feb. 3, 2011) .................................................. 3

*ACQIS, LLC v. EMC Corp.*,
  No. 14-cv-13560, 2021 WL 1088207 (D. Mass. Feb. 19, 2021) ........................................... 4, 5

*Maurice Mitchell Innovations, L.P. v. Intel Corp.*,
  No. 2:04-CV-450, 2006 WL 1751779, (E.D. Tex. June 21, 2006) .......................................... 2

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) .................................................................................................. 9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
  521 F.3d 1351 (Fed. Cir. 2008) .................................................................................................. 1

*Personalized Media Commc'ns, LLC v. Google LLC*,
  No. 2:19-cv-00090-JRG, 2020 WL 1666462 (E.D. Tex. Apr. 3, 2020) ............................ 2, 4, 5

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005) ............................................................................................. 3, 4

*State Farm Mut. Auto. Ins. Co. v. Logisticare Solutions, LLC*,
  751 F.3d 684 (5th Cir. 2014) ................................................................................................. 4, 5

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009) ................................................................................................ 10

I.      **INTRODUCTION**

Samsung's response confirms that its constructions either limit the claims to example embodiments or include ambiguities that do not resolve the parties' disputes. The prior litigation does not justify Samsung's constructions, because those prior analyses did not resolve the issues presented here based on the intrinsic record of the different patents and claims at issue. ACQIS requests that the Court construe the disputed terms based on the intrinsic record.

II.     **"PCI BUS TRANSACTION"**

Samsung's response confirms that the parties have a fundamental dispute about the scope of "PCI bus transaction"—what information from the PCI Specification the term requires, based on the intrinsic record and extrinsic evidence. Judge Davis's and Judge Burroughs's prior analyses did not resolve this issue, and they do not justify collateral estoppel here. ACQIS therefore requests that the Court conduct its own independent analysis of the intrinsic record and extrinsic evidence to resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

The intrinsic evidence demonstrates that a "transaction" does not require compliance with every element of the PCI Specification, because the invention provides a new interface that improves upon the parallel PCI bus. Dkt. 65 at 5-8, 10-11. Likewise, the extrinsic evidence confirms that a "transaction" represents only part of the PCI Specification's teachings. *Id.* at 9-10. Even Samsung and its expert confirm this understanding. Dkt. 69 at 15 n.3 (describing "irrelevant" sections of the PCI Specification); Ex. 9, Colwell Rebuttal Decl. ¶ 9.

ACQIS's proposed construction provides clarity on this point by articulating the four types of information that make up a "transaction," as described in the intrinsic record and PCI Specification: PCI address, data, byte enable, and command type information, in accordance with

the industry standard PCI Local Bus Specification. Dkt. 65 at 5-11. Samsung is therefore incorrect that ACQIS's construction here is "broader than" or "something less than" a "transaction" or an "attempt[] to skirt" a prior construction. Dkt. 69 at 2, 9, 11. ACQIS's construction *defines* "transaction" to resolve the parties' dispute and provide clarity.

Indeed, Samsung's proposed construction defines "transaction" as "transaction," providing no clarity as to what the term does or does not require. When ACQIS agreed to that construction in *EMC*, it understood that "transaction" and "information" were interchangeable and did not learn until summary judgment that EMC and then the district court understood "transaction" to instead include control signals, parity, and every other element of the PCI Specification "in its entirety." ACQIS therefore seeks to resolve that dispute now, while Samsung seeks to preserve the same ambiguity as in *EMC*.

### A. The Court has discretion to revisit the prior claim construction analyses to resolve the parties' dispute here.

Samsung minimizes the importance of the intrinsic record in favor of prior claim constructions and re-characterizations of ACQIS's arguments in different proceedings. This Court, however, gives only "reasoned deference" to prior district court claim constructions, because "the doctrine of *stare decisis* does not compel one district court judge to follow the decision of another." *Personalized Media Commc'ns, LLC v. Google LLC*, No. 2:19-cv-00090-JRG, 2020 WL 1666462, at *6 (E.D. Tex. Apr. 3, 2020) (quotation omitted). The Court has explained that it will consider prior claim constructions but ultimately "will render its own independent claim construction." *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006). Even after prior constructions, "district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Pfizer, Inc. v.*

2

*Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) (quotation omitted).

Here, neither Judge Davis's nor Judge Burroughs's prior analyses resolve the parties' fundamental dispute about the scope of "PCI bus transaction" based on the intrinsic record. Further, as discussed below, Judge Burroughs's summary judgment opinion conflicts with Judge Davis's prior analysis and construction of "PCI bus transaction." Deference to the prior analyses, therefore, does not resolve the dispute at issue or compel either court's conclusion. This matter therefore justifies the Court performing its own intrinsic record analysis.

**B.    ACQIS's construction is consistent with and adds specificity to Judge Davis's analysis and construction.**

ACQIS's proposed construction here aligns with Judge Davis's findings that (1) a "transaction" means "information," (2) it does not mean "signals," and (3) a "PCI bus transaction" does not require a parallel PCI bus. *ACQIS LLC v. Alcatel-Lucent USA Inc.*, No. 6:13-CV-638, 2015 WL 1737853, at *4-5 (E.D. Tex. Apr. 13, 2015) ("*Alcatel-Lucent*").

Judge Davis explained that "a PCI bus transaction must include all information required by the PCI standard," but did not define the scope of such information. *Id.* at *5. Judge Davis did not conclude that the term requires everything contained on every page of the PCI Specification, *id.*, which would conflict with Judge Davis's earlier order that the term "PCI bus transaction" does not require every aspect of the PCI Specification—in particular, aspects related to a parallel PCI bus—and instead facilitates "backward compatibility" for legacy PCI devices. *ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09-CV-148, 2011 WL 382556, at *5-6 (E.D. Tex. Feb. 3, 2011).

Judge Davis also did not expressly address whether ACQIS's proposed construction—"digital command, address, and data information, in accordance with the PCI standard, for communication with an interconnected peripheral component"—required less or *more* than "all information required by the PCI standard" for a "transaction." *Alcatel-Lucent*, 2015 WL

3

1737853, at *4-5. Instead, Judge Davis found only that the "extrinsic evidence does not clearly define a 'transaction'" as ACQIS proposed. *Id.*

On its face, Judge Davis's construction requires *less* than what ACQIS proposed. ACQIS's construction would have narrowed the term to "*digital command, address, and data information*, in accordance with the PCI standard," and Judge Davis construed the term to cover just "*information*, in accordance with the PCI standard." *Id.* (emphasis added). Judge Davis's analysis thus indicates that the term may have *broader* scope than what ACQIS proposed. *Id.*

Judge Davis's analysis thus did not resolve the fundamental dispute here, and it does not preclude ACQIS's current construction under collateral estoppel or any other theory. *See Personalized Media*, 2020 WL 1666462, at *6 (explaining that collateral estoppel applies only to an issue "identical to the issue litigated in a prior action") (quoting *State Farm Mut. Auto. Ins. Co. v. Logisticare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014)). ACQIS's proposed construction here incorporates additional detail, based on the intrinsic and extrinsic evidence, to resolve the dispute about which information from the PCI Specification a "transaction" requires. It aligns with and complements Judge Davis's construction and conclusions.

### C. Judge Burroughs applied a new interpretation of the parties' agreed construction, not Judge Davis's construction, at summary judgment.

Judge Burroughs's analysis also does not resolve the dispute here or preclude ACQIS's current construction, because Judge Burroughs adopted a new interpretation of the parties' stipulated construction at summary judgment. *ACQIS, LLC v. EMC Corp.*, No. 14-cv-13560, 2021 WL 1088207, at *3-6 (D. Mass. Feb. 19, 2021) *(EMC II).* Because Judge Burroughs did not interpret "PCI bus transaction" based on the intrinsic record, the dispute here is not "identical to the issue litigated in [the] prior action," and collateral estoppel does not apply. *Personalized Media*, 2020 WL 1666462, at *6 (quotation omitted); *Pfizer*, 429 F.3d at 1375-76.

4

Judge Burroughs's new interpretation diverged from Judge Davis's analysis. Judge Davis determined that "PCI bus transaction" did not require a physical bus, did not require "signals," and was not limited to the specific information proposed by ACQIS. *Alcatel-Lucent*, 2015 WL 1737853, at *4-5. Judge Burroughs found, at summary judgment, that "PCI bus transaction" required all of the PCI Specification "in its entirety," including "signals" and "elements of the Specification pertaining to a physical bus." *EMC II*, 2021 WL 1088207, at *3-6.

Samsung appears to recognize that Judge Burroughs's re-interpretation of the agreed construction does not bind ACQIS or the Court here. For example, Samsung does not argue that Judge Burroughs's interpretation triggers collateral estoppel—instead, Samsung anchors its collateral estoppel argument to Judge Davis's construction, asserting that "Judge Davis's construction of 'PCI bus transaction' played a pivotal role in Judge Burroughs granting summary judgment of non-infringement." Dkt. 69 at 17. Not so: Judge Burroughs departed from Judge Davis's key findings and adopted a new interpretation of the parties' agreed construction, and therefore Judge Davis's construction was not "necessary to support the judgment in the prior case." *Personalized Media*, 2020 WL 1666462, at *6 (quoting *State Farm*, 751 F.3d at 689).

Samsung does not even ask that the Court require the PCI Specification "in its entirety," as Judge Burroughs did. Samsung and its expert conclude that a "PCI bus transaction" does *not* require everything in the PCI Specification. Dkt. 69 at 15 n.3; Ex. 8, Colwell Decl. ¶ 58; Ex. 9, Colwell Rebuttal Decl. ¶ 9. ACQIS and Samsung thus both disagree with Judge Burroughs's conclusion, and ACQIS requests that the Court decline to adopt it here.

  **D.**  **ACQIS's construction is consistent with its positions at the PTAB.**

In the PTAB, as here, ACQIS contended that a "PCI bus transaction" should be construed in accordance with the information required by the PCI Specification. ACQIS's construction specifies what that information *is* to resolve the parties' dispute. ACQIS's construction thus

5

represents "a bus transaction according to the PCI protocol, and nothing less," and it does not "broaden the scope of the claims to include transactions that do not follow the PCI specification," as Samsung contends. Dkt. 69 at 9.

Further, Samsung is wrong that ACQIS's current construction excludes "control bits" discussed in the PTAB. Instead, during IPR oral argument, ACQIS's counsel used the term "control bits" to refer to the command information ACQIS has proposed here, explaining:

> So keep in mind the PCI standard has two timing requirements and they have what they call a data phase which the data is transmitted, so it's a time, and then the address phase. And **in the address phase they send the address and the control bits**. So during that phase the control bit, if it's an **interrupt acknowledge**, you can see that the address bits are don't cares.

Ex. Q, IPR2014-01469 Hr'g Tr. at 37:21-38:2 (emphasis added). This statement aligns with the PCI Specification's explanation that "[d]uring the address phase of a transaction, C/BE[3::0]# define the bus *command*." Ex. 11, PCI 2.2 at 9-10 (emphasis added). It further explains that "Interrupt Acknowledge" is a "Command Type" defined by the value "0000" for the bits C/BE[3::0]#. *Id.* at 21. ACQIS's counsel therefore described the invention consistent with ACQIS's proposed construction here, which includes "command type information."

E.    **The intrinsic record and extrinsic evidence show that a "PCI bus transaction" does not require "parity" or "control signals."**

Samsung agrees that a "PCI bus transaction" includes the information in ACQIS's construction. *See, e.g.*, Dkt. 69 at 9-10. Samsung identifies only two other things that a "transaction" purportedly requires: "control signals" and "parity." *Id.* at 12-15.

Samsung does not dispute that the claims do not recite "control signals" or "parity." Samsung also does not dispute that '768 Figure 13 illustrates a "PCI bus transaction" using the invention's XPBus and expressly includes the four types of PCI information in ACQIS's proposed construction. Samsung does not dispute that Figure 13 does not expressly illustrate any

6

PCI "control signals" or "parity," such as the signals in Figure 16 describing the prior parallel PCI bus. Samsung does not substantively address Figure 16, or its contrast with Figure 13, at all.

Samsung argues, however, that Figure 13 *implicitly* includes PCI control signals, suggesting that "PCI control signals (*e.g.*, FRAME#, IRDY# and TRDY#) are embedded in the BS0-BS3 bits included in Figure 13[.]" Dkt. 69 at 13 (citing '768 at 22:31-32, 21:55-58, Fig. 13). That is, Samsung argues that the embodiment in Figure 13 necessarily requires, by inference, PCI control signals (although Samsung cannot specify exactly which ones).

The '768 specification contradicts Samsung's inference by illustrating a "PCI bus transaction" without requiring any parallel PCI control signals. First, "BS0 to BS3 represent 4 bits of bus status data indicating the status of the XPBus," and they indicate XPBus functions like "idle, address transfer, write data transfer, read data transfer, switch XPBus direction, last data transfer, wait, and other cycles." Ex. 1, '768 at 21:40-47, 21:59-63. These bits represent new status information for the invention's new interface channel, not implicit PCI signals.

Second, in "one embodiment," BS0-BS3 represent "*part* of the *function* of PCI control signals, *such as* FRAME#, IRDY#, and TRDY#." Ex. 1, '768 at 21:37-58 (emphasis added). That is, BS0-BS3 do not represent *all* PCI control signals. They may or may *not* represent FRAME#, IRDY#, and TRDY#, as indicated by the permissive exemplary language "such as." If BS0-BS3 represent a PCI signal at all, they need not represent *all* the functionality of any signal.

Third, again in "one embodiment," "BS0 and BS1 are used to encode the PCI signals FRAME# and IRDY#, respectively." *Id.* at 22:31-32. That is, BS0-BS3 may, but not *must*, represent PCI control signals. This embodiment omits TRDY#, which Samsung incorrectly asserts is necessarily present in BS0-BS3, demonstrating that Samsung's inference is wrong.

As to "parity," Samsung does not address anything from the intrinsic record suggesting

7

that a "PCI bus transaction" requires "parity," even by inference. Samsung also does not address that the "PCI bus transaction" described in Figure 13 does not reference "parity" at all. Samsung has no intrinsic support for requiring "parity." Dkt. 69 at 14-15.

The extrinsic evidence also contradicts Samsung's position. The PCI Specification explains that "parity is calculated . . . *on* all PCI transactions," not that it is *part of* the transaction. Ex. 11, PCI 2.2 at 94 (emphasis added), 255; Ex. 7, Levitt Rebuttal Decl. ¶¶ 6-9. Samsung's quote "[d]uring address and data phases, parity covers AD[31::00] and C/BE[3::0]# lines" does not say that parity is part of a "transaction"—it does not use the term "transaction." Dkt. 69 at 14-15. That parity is *calculated on* a "transaction" during a "transaction" instead shows that it is separate and different, even if it occurs at the same time.

### III. "ADDRESS AND DATA BITS" / "ADDRESS BITS, DATA BITS, AND BYTE ENABLE INFORMATION BITS"

First, Samsung does not address that the claim language plainly recites only specific bits of a "PCI bus transaction," requiring no construction. Dkt. 65 at 17; Dkt. 69 at 18-20.

Second, during IPR, ACQIS did not disclaim any embodiment that does not include PCI control signals. ACQIS's counsel's references to "control bits" actually describe the "command type information" in ACQIS's current construction for "PCI bus transaction." Section I.D, *supra*. Similarly, ACQIS's agreement to a construction including "control bits" in *EMC* for different phrases does not show that ACQIS acceded to including the different term "control *signals*" in the construction. Samsung does not dispute that the agreed construction has no preclusive effect.

Third, Samsung's attempt to equate bits BS0-BS3 in embodiments of the invention with PCI "control signals" is unsupported and contradicted by the intrinsic record. Section I.E, *supra*.

### IV. "ENCODED" / "SERIAL"

Samsung does not dispute that the claims do not recite parallel-to-serial conversion.

8

Instead, Samsung argues that "the specifications uniformly explain and illustrate that encoded parallel PCI transactions are converted to serial form[.]" Dkt. 69 at 21. The embodiments in Figures 8A and 8B do *not* illustrate parallel-to-serial conversion, and so again Samsung finds its proposed limiting construction present "uniformly" by inference. *Id.* at 22-23. Samsung thus essentially argues that ACQIS re-defined "encoded" and "serial" phrases by inference, but Samsung has not met the standard for lexicography.

The presence of embodiments, such as Figures 8A and 8B, that do not describe parallel-to-serial conversion demonstrate that ACQIS did not redefine the common terms "encoded" and "serial." *See Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370-72 (Fed. Cir. 2005) (rejecting limiting construction due to disclosure of examples that did not include the limiting construction and corresponding ambiguity in alleged lexicography). Instead, Samsung's limiting construction would improperly exclude these embodiments.

Samsung also has not established that the *EMC* court's disclaimer finding should apply. The *EMC* finding related to the exact same claim language and disclosures at issue in IPR. Here, the claim language differs: the claims at issue here recite specific encoded "bits" of a PCI bus transaction, not an "encoded serial bit stream of Peripheral Component Interconnect (PCI) bus transaction," as in *EMC*. Samsung does not address this difference, instead simply alleging that the claims "use the same claim terms"—they do not. Dkt. 69 at 24. ACQIS's counsel's statements about different patents, claim terms, and disclosures do not establish disclaimer here.

## V.   "DATA TRANSFER SIGNAL"

Samsung identifies no intrinsic support for construing "data transfer signal" as the PCI FRAME# signal, and no legitimate basis to exclude the specification's actual example of a signal that transfers data—a clock signal called PCK and *not* a FRAME# signal. *Compare* Dkt. 65 at 24-26 *with* Dkt. 69 at 25-26. That PCK appears in Figure 10 does not somehow disqualify it

9

from informing the meaning of "data transfer signal," and the specifications describe PCK in several other examples, including '768 Figures 13, 14, and 15. Dkt. 65 at 25-26.

## VI. "USB" / "UNIVERSAL SERIAL BUS (USB) PROTOCOL" / "UNIVERSAL SERIAL BUS (USB) PROTOCOL [DATA/INFORMATION]"

ACQIS and Samsung agree that the term "USB" refers to the versions of the USB specification in existence at the time of the invention, including USB 2.0 and prior versions. Dkt. 65 at 26-27; Dkt. 69 at 26-28. Samsung and its expert also agree that the claims do not require *all* of USB 2.0 or prior USB specifications. Dkt. 69 at 29 n.6. That aspects of USB 2.0 and prior versions recited in the claims also appear in later, accused versions of USB is not relevant to claim construction. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009).

ACQIS's proposed constructions align with the claims' recitation of USB "data" and "information" and the specifications' use of those terms. Dkt. 65 at 28-29. Samsung does not address these specific claim limitations, and instead asserts that the claims require more because "USB 2.0 implements a three-part transaction: Token, Data, and Handshake." Dkt. 69 at 28-29. The claims do not recite a USB "transaction"—they recite USB "data" and "information." Samsung's additional limitations therefore have no support in the claims at issue.

## VII. "CONSOLE"

ACQIS has not construed "console" based on the accused products, as Samsung argues. ACQIS's proposed construction differentiates between the *multi-module* claims construed by Judge Davis and the different claims here. Dkt. 65 at 30 n.9. Further, the exemplary console ACQIS identifies in its opening brief "has a chassis and a motherboard" that merely "connects" the listed devices. Ex. 1, '768 at 10:57-58. ACQIS has not contended that a "console" must include the other devices. This example instead shows that a console is not *only* a chassis; it can also, for example, include a motherboard, or be an "enclosure," as Samsung acknowledges.

| | |
|---|---|
| Dated: August 3, 2021 | Respectfully submitted,<br><br>By: */s/ Ronald J. Schutz*<br><br>Ronald J. Schutz (admitted in this District)<br>MN Bar No. 0130849<br>Email: rschutz@robinskaplan.com<br>Aaron R. Fahrenkrog (*pro hac vice*)<br>MN Bar No. 0386673<br>Email: afahrenkrog@robinskaplan.com<br>Logan J. Drew (admitted in this District)<br>MN Bar No. 0389449<br>Email: ldrew@robinskaplan.com<br>Mary Pheng (*pro hac vice*)<br>MN Bar No. 0398500<br>Email: mpheng@robinskaplan.com<br>**ROBINS KAPLAN LLP**<br>2800 LaSalle Plaza<br>800 LaSalle Avenue<br>Minneapolis, MN 55402<br>Telephone: 612-349-8500<br>Facsimile: 612-339-4181<br><br>Of Counsel:<br>T. John Ward, Jr.<br>Texas State Bar No. 00794818<br>E-mail: jw@wsfirm.com<br>Andrea L. Fair<br>Texas State Bar No. 24078488<br>E-mail: andrea@wsfirm.com<br>**WARD, SMITH & HILL, PLLC**<br>1507 Bill Owens Parkway<br>Longview, TX 75604<br>(903) 757-6400 (telephone)<br>(903) 757-2323 (facsimile)<br><br>*Attorneys for Plaintiff ACQIS LLC* |

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on this the 3rd day of August, 2021.

                                                  /s/ *Ronald J. Schutz*
                                                  Ronald J. Schutz